# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| **1CAPAPP, LLC**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **JORDAN CHRISTIAN**, **JASON CHRISTIAN**, **JUSTIN CHRISTIAN**, and **THE CAROL JEANETTE CHRISTIAN REVOCABLE TRUST**, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | Case No. 3:25-cv-00993-KDB-DCK |
| | ) | |
| **THE CAROL JEANETTE CHRISTIAN REVOCABLE TRUST,** | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **1CAPAPP, LLC** and **CHRISTINE D. JOSEPH,** | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

## RESPONSE BRIEF OF PLAINTIFF 1CAPAPP, LLC
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff 1CapApp, LLC ("1CapApp") submits this response brief in opposition to Defendants' Rule 12(b) Motions to Dismiss (Doc. Nos. 15 and 16).

## INTRODUCTION

1CapApp is a Charlotte-based company that brought this lawsuit against Defendants[1] after Defendants hacked into 1CapApp's email and Google Drive accounts to steal thousands of 1CapApp's files. V. Compl. ¶¶ 38-42. Defendants knew that 1CapApp was a North Carolina company and that its manager, Christine Joseph, lived in North Carolina and operated the business from North Carolina. This Court has already enjoined Defendants from continuing their misconduct, Doc. 8, without Defendants even attempting to oppose the injunction or filing an opposition to 1CapApp's motion for preliminary injunction. *See* Doc. Nos. 4, 5 (moving for a temporary restraining order and preliminary injunction). Defendants' non-opposition to an injunction by this Court shows that Defendants have no genuine objection to this forum. The Defendants nonetheless seek to avoid the merits of 1CapApp's complaint by arguing that the Court should dismiss this lawsuit because this Court lacks personal jurisdiction over Defendants who intentionally and unlawfully accessed, downloaded, and transferred the digital files of a North Carolina company. Docs. 15-16.

Defendants also argue that 1CapApp failed to state claims against the Trust that it participated, through its trustee Jordan, in the efforts to infiltrate 1CapApp's system and commit other intentional torts. Defendants contend incorrectly that the Trust "is not a natural person" that can be sued." Doc. 16 at 6. It is black letter law that trusts are legal entities that can be sued for acts by their trustees. *See, e.g.,* RESTATEMENT (THIRD) OF TRUSTS § 105; N.C. Gen. Stat. § 36C-8-816(24).

---

[1] Defendants Jordan Christian, Jason Christian and Justin Christian are sometimes referred to individually by their first names and they are referred to collectively as the "Individual Defendants." Defendant The Carol Jeannette Christian Revocable Trust is referred to as the "Trust" and collectively with the "Individual Defendants," as the "Defendants."

2

For the following reasons, Defendants' Motions to Dismiss should be denied.

## SUMMARY OF RELEVANT ALLEGATIONS AND FACTS

### I.  1CapApp is a North Carolina-based company.

1CapApp develops computer and application software related to real-time captioning services of events, private meetings, and live broadcasts. V. Compl. ¶ 13.[2] 1CapApp began in 2013 as a North Carolina entity. V. Compl. ¶ 15 & Ex. A. Though it was later merged into a Kansas entity in 2021, 1CapApp has always maintained its operational roots in Charlotte. 1CapApp is registered to do business in North Carolina. V. Compl. ¶ 5. 1CapApp's Operating Agreement defines the "Company's office and principal place of business" as a Charlotte address. V. Compl. Ex. D. § 8.1. 1CapApp's registered office address and mailing address with the North Carolina Secretary of State are the same Charlotte address. Declaration of Christine Joseph ("Joseph Decl.") ¶ 5. 1CapApp's sole manager, Christine Joseph, is based in Charlotte. V. Compl. ¶ 5. She operates 1CapApp from Charlotte. *Id.* 1CapApp and Ms. Joseph use phone numbers with 704 Charlotte area codes. Joseph Decl. ¶¶ 6-7. When customers and businesses reach out to 1CapApp, their corresponding contact is often in Charlotte. *Id.* ¶ 8. Simply put, 1CapApp is a Charlotte, North Carolina-based business.

### II.  Defendants inject themselves into 1CapApp's affairs.

From 1CapApp's inception, two individuals actively managed 1CapApp: Christine Joseph and Jeanette Christian. V. Compl. ¶ 18. For years, Ms. Joseph and Ms. Christian each maintained between a forty- and fifty-percent membership interest in 1CapApp. *See id.* ¶¶ 16-17. However, Jeanette Christian passed away on July 20, 2025. *Id.* ¶ 22.

---

[2] The verified complaint is evidence that can be considered for this motion. *See Jones v. Solomon*, 90 F.4th 198, 206 (4th Cir. 2024).

Shortly after her passing, Ms. Christian's sons (the Individual Defendants) and the Trust tried to wedge themselves into the affairs of 1CapApp, including with the following purposeful and intentional communications with 1CapApp and Ms. Joseph in North Carolina.

On October 24, 2025, Jordan initiated contact with 1CapApp by sending the first of several emails to 1CapApp in Charlotte. *See* V. Compl. Ex. C. Specifically, Jordan sent 1CapApp's manager, Ms. Joseph, an email asserting that his mother's membership interest in 1CapApp had been assigned to the Trust. V. Compl. ¶ 25. Jordan also held himself out as the trustee of the Trust. *Id.* ¶ 26. Despite this representation about an assignment, none of 1CapApp's records reflect that the Trust is or ever has been a 1CapApp member. *Id.* ¶ 37. At no time have any of the Defendants been a manager or employee of 1CapApp or otherwise been involved in 1CapApp's business. *Id.* ¶ 19.

On October 31, 2025, Jordan again directed electronic communications to Ms. Joseph and 1CapApp in North Carolina, copying his brothers and co-conspirators, Justin and Jason. Joseph Decl. ¶ 10, Exh. 1. According to this email, Jordan sought to "fully understand the company's current operations and financial position." *Id.* Accordingly, and on the presumption that the Trust was indeed a member of 1CapApp, Jordan made a series of demands on 1CapApp and its North Carolina based manager, Ms. Joseph. *Id.* Jordan first demanded 1CapApp produce a copy of its Operating Agreement within five business days, together with bank statements, tax returns, and other financial documents within ten business days. *Id.* He also insisted that Ms. Joseph, 1CapApp's co-founder and sole manager, suspend her pay as manager of 1CapApp. *Id.* On top of that, Jordan requested a meeting of the members of 1CapApp. *Id.* Any such meeting would have presumably occurred in North Carolian as Jordan did not state in his meeting demand that it occur in a different location as required by the Operating Agreement. *See* Op. Agmt §§ 7.1 (stating that

4

meetings "shall be held at the principal office of the Company or at such other place either within or without the State of Kansas as shall be designated from time to time by the Manager *and stated in the notice of the meeting*") (emphasis added); § 8.1 (listing 3635 Stokes Ave., Charlotte NC 28210 as the principal office). Jordan copied his brothers, Defendants Justin and Jason, on this email and identified them as beneficiaries to the Trust. *Id.* Neither sibling voiced any objection to their brother's demands or the contents of this email in response. *Id.*

On November 11, 2025, at 8:53 a.m., Jordan directed yet another email to Ms. Joseph and 1CapApp in Charlotte. Joseph Decl. ¶ 12. He again insisted that 1CapApp produce certain documents by the arbitrary deadlines he imposed. *Id.* In this email, Jordan threatened to engage counsel if Ms. Joseph did not acquiesce to his demands. *Id.* He also noted that he had "attempted to call" Ms. Joseph "several times," presumably at her North Carolina phone number. *Id.* Later in the day on November 11, 2025, at 11:58 a.m., Defendant Jordan sent a follow-up email to Ms. Joseph. Joseph Decl. ¶ 12, Exh. 2. In this email, Defendant Jordan sought to clarify the deadlines by which he demanded 1CapApp produce documents. *Id.*

Jordan later directed communications to 1CapApp's counsel in Charlotte about his demands of 1CapApp. On November 12, 2025, Jordan emailed an attorney at undersigned counsel's firm about his record demands of 1CapApp. Joseph Decl. ¶ 14, Exh. 3. He stated that he wanted the documents he previously requested by November 14th. *Id.* As with his prior email, he copied his siblings, Justin and Jason, neither of whom responded with any objection. *Id.*

On November 13, 2025, Jordan directed yet another email to undersigned counsel in Charlotte. Joseph Decl. ¶ 15, Exh. 4. As with the previous email he directed to Charlotte counsel, he insisted that 1CapApp's deadline to produce the documents he requested was November 14th. *Id.*

### III. Defendants improperly access 1CapApp's email and Google Drive accounts and steal 1CapApp's documents by, among other things, sending documents to the Individual Defendants' email accounts.

On the morning of November 14, 2025 (the deadline unilaterally set by Jordan), Defendant conspired together to infiltrate 1CapApp's email and online storage system records. V. Compl. ¶¶ 38, 42. 1CapApp never gave any Defendant authority to access its email or storage records. *Id.* ¶ 42. 1CapApp had never maintained any email or online storage account for any of the Defendants and never provided them with login credentials. *Id.* ¶¶ 20-21.

Through their breach, Defendants took an enormous amount of 1CapApp's information. 1CapApp's investigation has so far revealed that a Defendant or several Defendants who accessed 1CapApp's system exported the entire 1CapApp email account for Jeanette Christian and downloaded every 1CapApp document in the online storage account that Ms. Christian used on behalf of 1CapApp. ¶ *Id.* 49. Defendants absconded with sensitive 1CapApp information including 1CapApp's financial data including tax returns, balance sheets, profit and loss statements, client contact information, and internal workflow documents, as well as customer retention agreements, NDAs, customer communications, draft customer products, confidential transcripts, and much more. *Id.* ¶ 50. In total, 1CapApp estimates that Defendants took over 57 gigabytes worth of its data and thousands of documents. *Id.* Although 1CapApp does not yet know which of the Defendants personally accessed its email communications and Google Drive, it is clear that Defendants, who are siblings and beneficiaries of the Trust, were acting in concert. In addition to Justin and Jason being copied on emails, the hacker or hackers sent "test emails" and emails with documents attached to the email accounts of all three Individual Defendants, supporting a plausible inference that all three brothers had agreed to steal the documents and data. *See* V. Compl. ¶¶ 57-59.

6

This massive intrusion into the email and Google Drive accounts for Charlotte-based 1CapApp forms the basis of its lawsuit. Together with Defendants' emails and phone calls designed to meddle in 1CapApp's affairs, detailed below, this illegal intrusion further provides the basis for jurisdiction over Defendants in the Western District of North Carolina.

## ARGUMENT

**I.     This Court has personal jurisdiction over Defendants.[3]**

Defendants have challenged personal jurisdiction over the Defendants pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. 1CapApp "need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge: as "[i]n deciding whether the plaintiff has made the requisite showing, the Court must construe all allegations and evidence available relating to the issue of personal jurisdiction in the light most favorable to the plaintiff." *Lagonia v. Ratliff*, 438 F. Supp. 3d 607, 611 (W.D.N.C. 2020) (citation and quotation marks omitted).

This Court may exercise personal jurisdiction if: "(1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (citation omitted). Practically speaking, "what would otherwise be a two-step analysis essentially folds into one: whether the

---

[3] At minimum and if the Court is inclined to grant Defendant's motion to dismiss, 1CapApp requests that the Court order jurisdictional discovery to uncover the scope of the Individual Defendants' involvement and tortious conduct directed at North Carolina. *See, e.g.*, *Celgard, LLC v. Shenzhen Senior Tech. Material Co.*, No. 3:20-CV-00130-GCM, 2021 WL 232130, at *1 (W.D.N.C. Jan. 22, 2021) ("If a plaintiff can show that discovery is necessary in order to meet defendant's challenge to personal jurisdiction, a court should ordinarily permit discovery on that issue unless plaintiff's claim appears to be clearly frivolous.") (citation and quotation marks omitted) (allowing jurisdictional discovery); *see also* Doc. No. 8 at 1 (finding a likelihood of success on the merits based on Plaintiff's allegations).

defendant has such minimal contacts with the forum state that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Lagonia*, 438 F. Supp. at 611 (cleaned up).

In this case, 1CapApp alleged facts in a verified complaint and added additional facts and documents in the Declaration of Christine Joseph, which together demonstrate that the Court has specific jurisdiction over Defendants. "In analyzing the contacts for specific jurisdiction, courts consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* (cleaned up). "Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of fair play and substantial justice is not thereby offended." *Id.* (citation and quotation marks omitted).

## A. Defendants purposefully availed themselves of the privilege of conducting activities in North Carolina.

The first prong of the analysis asks if Defendants should reasonably anticipate being brought into this forum based on their conduct and connection with the forum state. *Universal Leather*, 773 F.3d at 559. Physical presence in the forum is not required to exercise specific jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). The analysis focuses on the quality and nature of Defendants' contacts with the forum state, not merely the quantity. *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 134 (4th Cir. 2023).

Here, Defendants could and should have reasonably anticipated being brought into this forum because they purposefully availed themselves of conducting activities in North Carolina and directed unlawful activities at North Carolina. They did so in at least three ways: (1) by directing numerous communications to 1CapApp in Charlotte to assert the purported rights of the

Individual Defendants and the Trust; (2) by deliberately and intentionally accessing the digital records of 1CapApp, a North Carolina-based company; and (3) by committing intentional tortious acts expressly directed at a North Carolina company with the knowledge that the substantial harmful effects would be felt in this forum. The Individual Defendants also conspired together, such that their individual contacts can be attributed to each other.

### 1. *Defendants' communications directed at North Carolina.*

Jordan, on behalf of the Trust and his co-conspirator siblings, purposefully directed communications to 1CapApp in North Carolina in the fall of 2025. These efforts began after his mother passed away in July 2025. V. Compl. ¶ 22. Jordan emailed 1CapApp as the trustee of the Trust. *Id.* ¶ 26. In particular, Jordan sent four emails to 1CapApp's manager, Ms. Joseph, who lives in and operates 1CapApp's business from Charlotte, North Carolina. V. Compl. ¶ 5. Justin and Jason were copied on at least two emails. *See* Joseph Decl. ¶¶ 10, 12, Exh. 1-2. He also called Ms. Joseph on more than one occasion. *See* Joseph Decl. ¶ 12.

Critically, Defendants' purpose in these communications was to involve themselves in the business of 1CapApp, a North Carolina-based company. Thus, the quality and nature of these communications support personal jurisdiction in this state. *See Noble Bottling, LLC v. Reinhart Holdings, LLC*, No. 322CV00083KDBDCK, 2022 WL 3039771, at *3-4 (W.D.N.C. Aug. 1, 2022) (finding that defendant purposely availed herself of privilege of conducting business activities in North Carolina by sending two emails to "a business with a principal place of business in North Carolina"); *Lillie v. Guerra*, 559 F. Supp. 3d 464, 473 (M.D.N.C. 2021) ("The Fourth Circuit has held that emails and text messages directed at the forum can give rise to specific jurisdiction."); *Red Hat, Inc. v. Competitive Access Sys., Inc.*, 786 F. Supp. 3d 945, 954 (E.D.N.C. 2025) (finding

personal jurisdiction based upon "several emails, two phone calls, a mailed letter, and a video conference.").

### 2. Defendants' deliberate intrusion into a North Carolina company's digital records.

Defendants also deliberately and intentionally accessed the digital records of 1CapApp, a North Carolina company. *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 617 (E.D. Va. 2002) ("In the case of injuries to computer systems, various courts have concluded that the use of a computer or network service located in a particular state creates sufficient contacts to establish personal jurisdiction.") (cleaned up). 1CapApp operates its business from Charlotte, North Carolina, and its computer system and online storage accounts are used in connection with, and serve, that Charlotte-based business. V. Compl. ¶ 5. Defendants knowingly targeted the computer systems, accounts, and online data of this Charlotte-based company when they infiltrated 1CapApp's email and storage accounts. V. Compl. ¶¶ 38-42.

"Where, as here, specific jurisdiction is asserted based on electronic activity by a defendant, a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Bell v. Brownie*, No. 3:15CV70, 2016 WL 447723, at *3 (W.D.N.C. Feb. 4, 2016). All three elements are satisfied here: Defendants directed electronic activity toward 1CapApp's Charlotte-based systems; they did so with the intent of tortiously meddling in a North Carolina business and obtaining its records; and that activity gave rise to causes of action cognizable in North Carolina courts.

### 3. The "effects test" is satisfied under Fourth Circuit precedent.

The "effects test" derived from *Calder v. Jones*, 465 U.S. 783 (1984), allows personal jurisdiction over Defendants because they committed commit intentional torts expressly aimed at North Carolina with knowledge that the brunt of the injury will be felt in this state. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 398 (4th Cir. 2003). In *Calder*, the Supreme Court held that California could exercise personal jurisdiction over Florida defendants who wrote and published a libelous article about a California resident where the article was drawn from California sources and the defendants knew that the brunt of the injury would be felt in California. 465 U.S. at 789-90. The Court emphasized that the defendants' intentional, tortious actions were "expressly aimed" at the forum state. *Id.* at 789.

The Fourth Circuit has explained that the effects test may support personal jurisdiction where: "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm suffered; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir. 2009) (cleaned up); *see also Khashoggi v. NSO Grp. Technologies Limited*, 138 F. 4th 152, 160 (4th Cir. 2025) (citing *Calder* and explaining that "[s]pecific jurisdiction can be exercised over a foreign defendant who commits acts outside the forum if the conduct was 'expressly aimed' at the forum.").

All three elements are satisfied here. First, Defendants committed and conspired to commit intentional torts—including violations of the federal Computer Fraud and Abuse Act, computer trespass under North Carolina law, intentional intrusion upon seclusion, and conversion. V. Compl.

¶¶ 71-108. Each of these claims requires intentional conduct, and Defendants' infiltration of 1CapApp's computer system was deliberate and purposeful. *Id.* ¶¶ 42-45, 110-11.

Second, the brunt of the harm was felt by 1CapApp in North Carolina and the connection with North Carolina is substantial, not incidental. *See Khashoggi*, 138 F. 4th at 160 (explaining that the connection must be "substantial"). 1CapApp operates from Charlotte, where its manager, Ms. Joseph, runs the business from her home. V. Compl. ¶ 5. The injury to 1CapApp's business relationships, data security, and operations was suffered in this forum. *Id.* ¶¶ 61-69. *See Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 374 (4th Cir. 1985) (holding that "the brunt of the alleged injuries to [plaintiff] occurred in Virginia" because the plaintiff was a "local bank"); *First Am. First, Inc. v. Nat'l Ass'n of Bank Women*, 802 F.2d 1511, 1517 (4th Cir. 1986) (explaining that brunt of injury felt where the defendant "resided and conducted his business").

Third, Defendants' tortious conduct was expressly aimed at North Carolina. Defendants knew 1CapApp was a Charlotte-based business. V. Compl. ¶¶ 5, 25-27. They directed multiple communications via email and telephone to 1CapApp in Charlotte before conspiring to unlawfully access 1CapApp's email communications and Google Drive. *Id.* ¶¶ 25-27; Joseph Decl. ¶¶ 9-15. Defendants deliberately targeted 1CapApp's computer systems and communications—systems that serve a Charlotte business—to extract data and documents that belong to a North Carolina company. V. Compl. ¶¶ 38-50. They then used 1CapApp's systems to send emails and documents from 1CapApp's email accounts to themselves, further showing the connection between Defendants' conduct and North Carolina. V. Compl. ¶ 46. Defendants knew that any harm from their intrusion would be felt by 1CapApp in Charlotte. *See* V. Compl. ¶¶ 66-68 (alleging harm to 1CapApp's business relationships, which results in harm that is felt in North Carolina where

1CapApp operates). This is not a case where the parties' connection to the forum is merely fortuitous; rather, Defendants specifically targeted a known North Carolina company.

In short, Defendants knew exactly where 1CapApp and its manager were located as their mother was a prior member of 1CapApp, and Defendants directed multiple communications to 1CapApp in Charlotte. Defendants thus knew that substantial harm from their cyber intrusion would be felt in North Carolina. This Court may thus properly exercise jurisdiction over Defendants.

### 4. *Personal jurisdiction exists over all Individual Defendants based on civil conspiracy.*

Even if any of the Defendants' individual contacts with North Carolina are somehow insufficient standing alone, personal jurisdiction exists over all the Defendants based on the civil conspiracy among them. The Fourth Circuit has expressly recognized that a plaintiff can establish personal jurisdiction over a defendant through a "conspiracy theory of jurisdiction." *Unspam Tech., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013); *see also BeoCare Grp., Inc. v. Morrissey*, 124 F. Supp. 3d 696, 701 (W.D.N.C. 2015) (finding that plaintiffs alleged personal jurisdiction by alleging a civil conspiracy). To invoke this theory, a plaintiff must plausibly allege: (1) that a conspiracy existed; (2) that the ... defendant[ ] participated in the conspiracy; and (3) that a coconspirator's activities in furtherance of the conspiracy had sufficient contacts with [North Carolina] to subject that conspirator to jurisdiction in [North Carolina]." *BeoCare Group*, 124 F. Supp. 3d at 702.

1CapApp has satisfied all three requirements. First, 1CapApp has plausibly alleged the existence of a conspiracy. The Verified Complaint expressly alleges that "Defendants had an agreement to do an unlawful act or to do a lawful act in an unlawful way," which "included accessing 1CapApp's protected computer data or system without authorization in violation of 18

U.S.C. § 1030, trespassing upon its computer system, intruding upon its seclusion, and converting its property, among other acts." V. Compl. ¶ 104. The Complaint further alleges that "Defendants acted pursuant to a common scheme to harm 1CapApp." *Id.* ¶ 105. Elsewhere, 1CapApp alleges that "Defendants conspired with one another to perpetrate unauthorized access to 1CapApp's private, protected computer system." *Id.* ¶ 60.

The alleged coordinated nature of Defendants' conduct and other circumstantial evidence supports the plausible inference of an agreement and civil conspiracy between the siblings and fellow beneficiaries of the Trust. *See BDM Invs. v. Lenhil, Inc.*, 264 N.C. App. 282, 300, 826 S.E.2d 746, 762 (2019) (explaining that a party may prove civil conspiracy with circumstantial evidence). Jordan copied his brothers, Defendants Justin and Jason, on his demanding emails to 1CapApp, and neither sibling voiced any objection. Joseph Decl. ¶¶ 10, 12. Documents stolen from 1CapApp's system were also emailed to email addresses known to be used by all three Individual Defendants: startupjc@gmail.com (Justin), jason.m.christian@gmail.com (Jason), and jmc1010ku@gmail.com (Jordan). V. Compl. ¶¶ 57-58. This supports a plausible inference that all three Individual Defendants at least agreed to (and likely participated in) the unlawful access and then the fruits of the intrusion were shared among all three brothers, further evidencing their common scheme.

Second, each Individual Defendant participated in the conspiracy. Jordan appears to have served as the ringleader, directing communications to 1CapApp and orchestrating the demands that preceded the intrusion. V. Compl. ¶¶ 25-27; Joseph Decl. ¶¶ 9-15, Exh. 1-4. Justin and Jason were copied on Jordan's demanding communications and received the stolen documents at their email addresses. V. Compl. ¶¶57-58; Joseph Decl. ¶ 10, 12, Exh. 1-2. Their receipt of stolen data

and failure to object to their brother's coordinated campaign demonstrates their knowing participation in the conspiracy.

Third, a coconspirator's activities in furtherance of the conspiracy had sufficient contacts with North Carolina to subject that conspirator to jurisdiction. Jordan's numerous communications directed at 1CapApp in Charlotte, and the cyber intrusion into a Charlotte-based company's computer systems, constitute substantial contacts with North Carolina made in furtherance of the conspiracy. As set forth above, these contacts independently satisfy the purposeful availment requirement for personal jurisdiction.

Accordingly, even if Jason or Justin individually had fewer direct contacts with North Carolina, they are also subject to personal jurisdiction based on Jordan's contacts made in furtherance of their joint conspiracy to infiltrate 1CapApp's systems. *See Unspam Tech.*, 716 F.3d at 329.

### B. 1CapApp's claims arise out of activities Defendants directed at North Carolina.

The second prong considers whether 1CapApp's claims arise out of activities Defendants directed at North Carolina.

Defendants' intrusion and electronic theft of data from a North Carolina company are what give rise to this lawsuit. *See* V. Compl. ¶ 1 ("This litigation stems from the Defendants' unlawful and malicious trespass on 1CapApp's protected computer system in violation of federal and state law."). Defendants deliberately targeted a Charlotte-based company with a cyber attack and stole its information. Defendants then took tens of thousands of files that belong to 1CapApp. *See id.* ¶ 42. As stated in the Verified Complaint, Defendants "without authority, access[ed], download[ed], and/or transferr[ed] at least 57 gigabytes of data." *Id.* Defendants took "1CapApp's financial data including tax returns, balance sheets, profit and loss statements, client contact information, and

internal workflow documents, as well as customer retention agreements, NDAs, customer communications, draft customer products, confidential transcripts, and much more." *Id.* ¶ 50.

As part of their heist, Defendants also attempted to email themselves files from 1CapApp's system. *Id.* ¶ 57. Each of the Individual Defendants' email addresses were involved. *See id.* ¶ 58. And after they accessed 1CapApp's computer systems, downloaded its data, and emailed its files, the Defendants tried to hide their presence by deleting emails and data. *Id.* ¶ 59.

Defendants should not be allowed to excuse themselves from the consequences of their intentional and tortious conduct under the guise of personal jurisdiction, especially when 1CapApp's very claims arise out of the wrongful conduct that Defendants directed toward this forum. *See Greentouch USA, Inc. v. Starwood Furniture (MFG) Vietnam Corp.*, No. 1:24-CV-964, 2025 WL 3640951, at *2 (M.D.N.C. Dec. 16, 2025) ("[T]he commission of intentional torts, such as defrauding a North Carolina company and breaching a fiduciary duty owed to a North Carolina company, are quintessential contacts giving rise to claims."). Defendants' "contact" is thus sufficient to create jurisdiction in and of itself. *See Lagonia v. Ratliff*, 438 F. Supp. 3d 607, 611 (W.D.N.C. 2020) ("Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of fair play and substantial justice is not thereby offended.") (citation and quotation marks omitted).

**C. Personal jurisdiction over the Defendants is constitutionally reasonable.**

The third prong asks whether adjudicating a claim in a particular state is constitutionally reasonable to safeguard against litigation that is "so gravely difficult and inconvenient as to place the defendant at severe disadvantage in comparison to his opponent." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 296 (4th Cir. 2009) (citation and quotation marks omitted). The burden on defendants, the interests of the forum state, and the plaintiff's interests in obtaining relief guide the inquiry. *Id.*; *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*,

16

682 F.3d 292, 303 (4th Cir. 2012); *Burger King*, 471 U.S. at 477. And "[a] state's interest in exercising personal jurisdiction over a tortfeasor takes on a stronger role than in other contexts such as a contract dispute." *Verizon Online*, 203 F. Supp. 2d at 617.

The Court's exercise of jurisdiction over Defendants is constitutionally reasonable. Although litigating in a state in which they do not reside may inconvenience Defendants, that inconvenience is not so great as to place them at a "severe disadvantage." Indeed, Defendants have already obtained the assistance of Charlotte-based counsel who has made multiple filings on Defendants' behalf, including Counterclaims. *See Lagonia*, 438 F. Supp. at 614 ("While it would no doubt be more convenient for Defendants to litigate the case against them in West Virginia, there is no substantial burden on them to defend the claims in North Carolina, where they have already obtained counsel."). And, to repeat, this case arises out of Defendants' efforts to intervene in a Charlotte-based business up to and including hacking into its electronic records. North Carolina has a manifest interest in providing its businesses with effective means of redress and offering remedies to its wronged residents. *See Burger King*, 471 U.S. at 482; *dmarcian*, 60 F.4th at 135; *see also* N.C. Gen. Stat. § 14-458 (authorizing lawsuits for computer trespass). Lastly, 1CapApp's sole manager, who conducts 1CapApp's business from her residence in Charlotte, possesses a compelling interest in relying on her home state to vindicate the rights she seeks to enforce on behalf of her business. *See dmarcian*, 60 F.4th at 135.

Thus, this Court may constitutionally exercise jurisdiction over Defendants and should deny Defendants' motion pursuant to Rule 12(b)(2).

II. **1CapApp adequately stated claims against the Trust by alleging wrongful acts by Jordan, its trustee, and his co-conspirators.**

Defendants also move to dismiss all claims against the Trust, except for the claim for declaratory relief. "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure

to state a claim upon which relief can be granted tests whether the complaint is legally and factually sufficient." *Friedlam Partners, LLC, v. Lerner and Company Real Estate, et al.*, No. 3:22-CV-00335-KDB-DCK, 2026 WL 700207, at \*1 (W.D.N.C. Mar. 12, 2026) (citation and quotation marks omitted). In reviewing a complaint pursuant to Rule 12(b)(6), a court "accepts all well-pleaded facts as true and draws all reasonable inferences in Plaintiff's favor." *Id.* (citations omitted). A "motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (citation and quotation marks omitted).

In their Motion to Dismiss, Defendants attempt to make several arguments for dismissing claims against the Trust pursuant to Rule 12(b)(6).

First, Defendants state that "the Trust is not a natural person" and therefore "could not have plausibly engaged in any conduct giving rise to Plaintiff's claims." Doc. 16 (Br. at 6). The Kansas Uniform Trust Codes defines "Person" to include a "trust." Kan. Stat. Ann. § 58a-103(9).[4] Additionally, the Kansas Court of Appeals has "held a trust to be a juridical person" and that "[u]nder Kansas law, a trust is an entity that can sue and be sued in the name of a trustee." *Donald Dean Schaake Revocable Tr. v. City of Lawrence*, 561 P.3d 927 (Kan. Ct. App. 2025). North Carolina law similarly consider trusts to be entities that are capable of suing and being sued. *See* N.C. Gen. Stat. § 36C-8-816(24) (stating that a trustee may "[p]rosecute ***or defend*** an action, claim, or judicial proceeding . . .") (emphasis added); *see also* Fed. R. Civ. P. 17(b)(3) ("Capacity to . . . be sued is determined . . . for all other parties, by the law of the state where the court is located"). The Restatement of Trusts similarly states that "[a] third party may assert a claim against a trust for liability incurred in trust administration by proceeding against the trustee in the trustee's

---

[4] The Trust is based in Kansas. V. Compl. & Answer ¶ 10.

representative capacity, whether or not the trustee is personally liable." Restatement (Third) of Trusts § 105. And 1CapApp alleged that Jordan was acting in his capacity as the trustee of the Trust when he demanded documents from 1CapApp that he eventually obtained by unlawfully accessing 1CapApp's email and Google Drive accounts, supporting the plausible inference that Jordan was acting on behalf of his siblings, himself, and the Trust when he or his co-conspirators decided to take documents from 1CapApp. V. Compl. ¶¶ 25-26 & Exh. C. Defendants' argument that the Trust somehow cannot be held liable for the role of its trustee in the hacking of 1CapApp's computer system to obtain documents demanded by its trustee because it is not a person fails.[5] Second, to attack 1CapApp's civil conspiracy claim, Defendants state that "[t]here is no allegation that any of the defendants, much less the Trust, reached any agreement to do anything." Doc. 16 at 6. This is incorrect. Paragraph 104 of the Verified Complaint expressly states that "Defendants had an agreement to do an unlawful act or to do a lawful act in an unlawful way. This conduct included accessing 1CapApp's protected computer data or system without authorization in violation of 18 § U.S.C. 1030, trespassing upon its computer system, intruding upon its seclusion, and converting its property, among other acts." Similarly, in paragraph 105, 1CapApp alleges that "Defendants acted pursuant a common scheme to harm 1CapApp." Elsewhere, 1CapApp alleges that "Defendants conspired with one another to perpetrate unauthorized access to 1CapApp's private, protected computer system." V. Compl. ¶ 60.

---

[5] If Defendants' issue is that 1CapApp named the Trust as a defendant rather than suing Jordan in his capacity as the trustee of the Trust, the case caption can easily be modified to reflect that Jordan has been sued personally and in his capacity as the trustee. *See, e.g.*, *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC 58, 2017 WL 2979142, at *10 (N.C. Super. July 12, 2017) (directing that a case caption be amended to clarify that a trustee was sued "both in her individual capacity and as Trustee of the Revocable Trust").

Additionally, 1CapApp alleges several other facts that surpass the plausibility threshold for alleging the existence of conspiracy, including that (i) Defendants are Trust beneficiaries and siblings with a personal relationship to each other and Ms. Christian, not strangers; (ii) Defendants sent "test emails" to email addresses owned by all three defendants, V. Compl. ¶ 46; (ii) Defendants emailed documents to their personal email accounts, *id.* ¶¶ 57-58 and Defendants attempted to cover their tracks when they exited 1CapApp's computer system, *id.* ¶ 59.

"[I]t is difficult to dismiss a conspiracy claim summarily because the elements of a conspiracy claim are broadly stated." *Safety Test & Equip. Co. v. Am. Safety Util. Corp.*, No. 13 CVS 1037, 2015 WL 1880769, at *18 (N.C. Super. Apr. 23, 2015). These allegations are sufficient to state the agreement element of a civil conspiracy claim. *See Boyd v. Drum*, 501 S.E.2d 91, 96 (1998), *aff'd,* 350 N.C. 90, 511 S.E.2d 304 (1999) ("[A]n action for civil conspiracy may be established by circumstantial evidence[.]") (citation and quotation marks omitted); *see also Glob. Textile All., Inc. v. TDI Worldwide, LLC*, No. 17 CVS 7304, 2018 WL 4902003, at *6 (N.C. Super. Oct. 9, 2018) (denying motion to dismiss civil conspiracy claim); *Am. Air Filter Co., Inc. v. Price*, No. 16 CVS 13610, 2017 WL 2797794, at *12 (N.C. Super. June 26, 2017) (denying motion to dismiss civil conspiracy claim).

And lastly, Defendants argue that 1CapApp has not "alleged any theory of vicarious liability." Doc. 16 at 7. However, 1CapApp alleges in its Verified Complaint that Jordan "asserted that he was the trustee" of the Trust at the time he began taking actions against 1CapApp. V. Compl. ¶ 26. 1CapApp also alleges that Jordan, "[a]s purported trustee," made the record demands of 1CapApp that precipitated the infiltration of 1CapApp's email and storage accounts. *Id.* ¶ 99. A trustee is an agent of the Trust. *See* N.C. Gen. Stat. § 36C-8-815 (defining general powers of trustee with respect to a trust); *Williams v. Ests. LLC*, No. 1:19-CV-1076, 2025 WL 892943, at *6

(M.D.N.C. Mar. 24, 2025) ("LLCs, trusts, and other entities act only through their agents. . . . For a trust, this includes the trustee.") (cleaned up).

For these reasons, Defendants Rule 12(b)(6) Motion to Dismiss as to 1CapApp's claims against the Trust should be denied.

## CONCLUSION

Based on the foregoing, 1CapApp respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety. If the Court is inclined to grant Defendants' Motion in whole or in part, 1CapApp respectfully requests that it be granted leave to amend its Verified Complaint to address any potential pleading deficiencies.

Respectfully submitted this 23rd day of March, 2026.

**WAGNER HICKS PLLC**

/s/ *R. Cuyler Haskins*
Sean C. Wagner (NC State Bar No. 50233)
R. Cuyler Haskins (NC State Bar No. 62204)
831 E. Morehead Street, Suite 860
Charlotte, North Carolina 28202
Telephone: (704) 705-7358
sean.wagner@wagnerhicks.law
cuyler.haskins@wagnerhicks.law

*Attorneys for Plaintiff 1CapApp, LLC and*
*Counterclaim Defendant Christine D. Joseph*

21

# CERTIFICATION OF BRIEF LENGTH

I hereby certify that the foregoing **Response Brief in Opposition to Motion to Dismiss** complies with Local Rule 7.1(d), and that this brief does not exceed 25 pages, the font size is a minimum of 12 point, lines are double-spaced, margins are one inch, and each page is numbered.

Dated: March 23, 2026.

**WAGNER HICKS PLLC**

/s/ *R. Cuyler Haskins*
R. Cuyler Haskins

# CERTIFICATION ON ARTIFICIAL INTELLIGENCE

Pursuant to the Court's June 18, 2024, Standing Order on the Use of Artificial Intelligence, the undersigned counsel for Defendant certifies the following:

1.    No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2.    Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: March 23, 2026.

**WAGNER HICKS PLLC**

/s/ *R. Cuyler Haskins*
R. Cuyler Haskins

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this date I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of filing to all parties receiving electronic service including the following:

Richard Jeremy Sugg
BELL, DAVIS & PITT, P.A.
227 W. Trade Street, Suite 1800
Charlotte, NC 28202
Telephone: 704-227-0400
Email: jsugg@belldavispitt.com

*Attorney for Defendants*

This the 23rd day of March, 2026.

**WAGNER HICKS PLLC**

/s/ *R. Cuyler Haskins*
Sean C. Wagner (NC State Bar No. 50233)
R. Cuyler Haskins (NC State Bar No. 62204)
831 E. Morehead Street, Suite 860
Charlotte, North Carolina 28202
Telephone: (704) 705-7358
sean.wagner@wagnerhicks.law
cuyler.haskins@wagnerhicks.law

*Attorneys for Plaintiff 1CapApp, LLC and*
*Counterclaim Defendant Christine D. Joseph*