# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Case No. 3:25-cv-993

1CAPAPP, LLC,

        Plaintiff,

v.

JORDAN CHRISTIAN, JASON
CHRISTIAN, JUSTIN CHRISTIAN,
and THE CAROL JEANETTE
CHRISTIAN REVOCABLE TRUST,

        Defendants.

**REPLY BRIEF IN SUPPORT OF
DEFENDANTS' RULE 12(b)
MOTIONS TO DISMISS**

REPLYING TO Plaintiff's Response Brief in Opposition to Defendants' Motion to Dismiss (ECF 22), and in further support of Defendants' Rule 12(b) Motions to Dismiss (ECF 15), Defendants respectfully show the court as follows:

## INTRODUCTION

Plaintiff alleges that either Jordan Christian, Jason Christian or Justin Christian (the "Individual Defendants") used a personal email account to reset the password for, and gain access to, an online email and document-storage account hosted by a third-party provider that was used by their deceased mother, Jeanette Christian, when she lived in Kansas and managed Plaintiff, a Kansas limited liability company. Plaintiff does not allege the unidentified Individual Defendant that gained access to Jeanette's account did so by sending any emails or other form of electronic signals into North Carolina. Nonetheless, Plaintiff contends this Court has personal jurisdiction over each of the Individual Defendants.

1

In so arguing, Plaintiff incorrectly relies on four emails sent, and an unknown number of phone calls made, by Jordan in his capacity as Trustee of the Carol Jeanette Christian Revocable Trust (the "Trust") to advocate for the Trust's rights as a member of Plaintiff. However, Plaintiff's tort-based claims against the Individual Defendants do not arise out of any emails or phone calls. Rather, they arise out of the alleged unauthorized access to Jeanette Christian's online account that was achieved by resetting her password. Plaintiff's attempts to relax the requirements for specific jurisdiction over the Individual Defendants based on contacts that did not give rise to Plaintiff's claims against those Defendants constitutes the sort of "loose general jurisdiction" that has been previously rejected by the Supreme Court and this Court.

Plaintiff further asserts that personal jurisdiction over the Individual Defendants is proper under the "*Calder* effects test." In doing so, Plaintiff overstates the significance of Plaintiff's alleged status as a "North Carolina-based business." No matter the extent of *Plaintiff's* conduct in North Carolina, there can be no personal jurisdiction over the Individual Defendants where Plaintiff itself is the only connection between the Individual Defendants and this forum. Under the test adopted by the Fourth Circuit in *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002), and applied in *Khashoggi v. NSO Group Technologies Limited*, 138 F.4th 152 (4th Cir. 2025), Plaintiff has not alleged sufficient facts to support an exercise of personal jurisdiction over the Individual Defendants because there is no allegation that any of them directed electronic activity into the state giving rise to Plaintiff's claims against them.

Plaintiff also mistakenly relies on its claim of civil conspiracy to support personal jurisdiction over the Individual Defendants, and to avoid dismissal of its tort claims against the Trust. The Complaint contains only threadbare recitals of the elements of a claim of civil conspiracy and allegations that are equally consistent with non-collusive conduct. Such allegations do not move a claim of conspiracy over the line from possible to plausible. For this reason, the conspiracy claim is insufficient to support personal jurisdiction or liability on the part of the Trust. Because the Complaint contains no other facts supporting a theory of liability on the part of the Trust for Plaintiff's tort claims, the Trust should be dismissed from each of those claims pursuant to Rule 12(b)(6).

## ARGUMENT

I. **THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.**

### A. *Emails and phone calls by the Trustee are irrelevant to Plaintiff's claims against the Individual Defendants.*

Plaintiff points to four emails and "more than one" phone call to individuals in North Carolina in support of Plaintiff's argument for personal jurisdiction over the Individual Defendants. (ECF 22 p 9). However, none of these emails or phone calls gave rise to Plaintiff's claims against the Individual Defendants. Rather, as Plaintiff acknowledges, "Defendants' [alleged] intrusion and electronic theft of data . . . are what give rise to this lawsuit." (ECF 22 p 15). Defendants are alleged to have committed this intrusion and electronic theft not by sending emails or making phone

3

calls to anyone in North Carolina, but by using a password reset function to gain access to their deceased mother's email and document-storage account. (ECF 1 ¶ 43). Because specific jurisdiction is claim-specific and requires that Plaintiff's claims arise out of activities directed at the forum, Plaintiff's reliance on emails and phone calls that did not give rise to Plaintiff's claims against the Individual Defendants is misplaced.

1. *Specific jurisdiction is claim-specific.*

"The standard for determining the existence of personal jurisdiction over a nonresident defendant varies, depending on whether the defendant's contacts with the forum state also provide the basis for the suit." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). "If those contacts form the basis for the suit, they may establish 'specific jurisdiction.'" *Id.* "If, however, the defendant's contacts with the state are not also the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the state." *Id.* "Even a single contact may be sufficient to create jurisdiction *when the cause of action arises out of that single contact*[.]" *Id.* (emphasis added). However, if the claim does not arise out of the defendant's contacts with the forum, "the defendant's activities in the state must have been 'continuous and systematic.'" *Id.* (citation omitted).

In *Renfinity, Inc. v Jones*, this Court emphasized that "the analysis of purposeful availment must focus on the Defendants' alleged conduct directed into North Carolina that allegedly constituted and furthered the alleged" tort that gave

rise to the plaintiff's claim. 2022 WL 332782, at *4 (W.D.N.C. Feb. 3, 2022). In doing so, this Court further recognized that "'[s]pecific jurisdiction is bound up with the claim asserted—it is claim-specific.'" *Id.* (quoting *Willow Bend, LLC v. Downtown ABQ Partners, LLC*, 612 F.3d 390 (5th Cir. 2010)).

"In determining whether specific jurisdiction exists" a court must consider "whether the plaintiff's claims arise out of those activities directed at the state[.]" *Carefirst*, 334 F.3d at 397. Plaintiff's claims against the Individual Defendants do not arise out of emails or phone calls sent by Jordan in his capacity as Trustee to advocate for the Trust's rights as a member of Plaintiff. Accordingly, these emails and phone calls do not provide a basis for personal jurisdiction over the Individual Defendants for the claims asserted against them.[1]

2. *Plaintiff's proposed "'loose' general jurisdiction" has been rejected by the Supreme Court and this Court.*

To the extent Plaintiff points to the Trustee's emails and phone calls in an attempt to relax the requirements for claim-specific jurisdiction, such an approach has been rejected by the Supreme Court and this Court.

---

[1] The cases relied on by Plaintiff in support of its position are in concert with this analysis because the claims asserted in each of those cases arose from the communications at issue. *See Red Hat, Inc. v. Competitive Access Sys., Inc.*, 786 F. Supp. 3d 945, 954 (E.D.N.C. 2025) ("Red Hat's APAA and declaratory judgment claims arise directly from these communications."); *Noble Bottling, LLC v. Reinhart Holdings, LLC*, 2022 WL 3039771, at *4 (W.D.N.C. Aug. 1, 2022) ("Plaintiff's fraud claim and conversion claim against Weber arise from the alleged misrepresentations in her emails . . . ."); *Lillie v. Guerra*, 559 F.Supp.3d 464, 469, 473 (M.D.N.C. 2021) (finding jurisdiction over claims for, among others, intentional infliction of emotional distress and unfair and deceptive trade practices where "[t]he Complaint demonstrate[d] Defendants engaged in a pattern of communications to Plaintiffs for the purpose of exerting pressure regarding payment.").

5

In *Bristol-Myers Squibb Co. v. Superior Court of California*, the Supreme Court considered a "sliding scale approach" to specific jurisdiction, in which "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." 582 U.S. 255, 264 (2017). The Supreme Court held there was no support in its cases for this approach, "which resembles a loose and spurious form of general jurisdiction." *Id.* Rather, "[w]hat is needed" for specific jurisdiction "is a connection between the forum and *the specific claims at issue.*" *Id.* (emphasis added).

In *White v. Aetna Life Ins. Co.*, this Court applied *Bristol-Myers* in holding there was no specific jurisdiction over a defendant where it was "undisputed the Defendant regularly conduct[ed] business in North Carolina and maintain[ed] offices, agents, and property in North Carolina[,]" because the plaintiff did "not allege sufficient facts showing that Plaintiff's claims arose out of Defendant's specific contacts with North Carolina." 519 F. Supp. 3d 253, 258-60 (W.D.N.C. 2021). As the Court recognized: "the dispositive question in addressing specific jurisdiction is whether the alleged injuries arose out of <u>Defendant's</u> . . . purposeful contacts with North Carolina." *Id.* (emphasis in original).

Plaintiff does not allege any injury arising out of the Trustee's emails and phone calls. Plaintiff's attempt to relax the requirements for specific jurisdiction based on these contacts would amount to the loose and spurious form of general jurisdiction rejected in *Bristol-Myers*. Plaintiff cannot loosen the requirements for

6

specific jurisdiction by glomming on contacts with the forum that did not give rise to Plaintiff's claims against the Individual Defendants.

### B. *Plaintiff relies too heavily on the "*Calder *effects test".*

Plaintiff relies heavily on the "*Calder* effects test" in arguing that personal jurisdiction over the Individual Defendants is proper. However, this reliance is misplaced for two reasons. First, Plaintiff overstates the significance of its alleged status as a "North Carolina-based business." Second, in *ALS Scan*, the Fourth Circuit adopted a specific test in the internet context that is to be applied in a case, such as this one, in which any contacts with the forum state would have occurred electronically.

1. Plaintiff incorrectly relies on its alleged status a "North Carolina-based business".

In *Young v. New Haven Advocate*, the plaintiff argued that *Calder v. Jones*, 465 U.S. 783 (1984), "require[d] a finding of jurisdiction . . . simply because the [defendants] posted articles on their Internet websites that discussed the warden and his Virginia prison, and he would feel the effects of any libel in Virginia, where he live[d] and work[ed]." 315 F.3d 256, 262 (4th Cir. 2002). However, the Fourth Circuit held "*Calder* does not sweep that broadly." *Id.* Rather, the Fourth Circuit noted that it had previously "emphasized how important it is in light of *Calder* to look at whether the defendant has expressly aimed or directed its conduct toward the forum state." *Young*, 315 F.3d at 262 (citing *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625-26 (4th Cir. 1997)). "'[A]lthough the place that plaintiff feels the alleged injury is

7

plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own [sufficient minimum] contacts with the state if jurisdiction . . . is to be upheld.'" *Id.* (quoting *ESAB Group, Inc.*,126 F.3d at 626). The Fourth Circuit "thus had no trouble in concluding in *ALS Scan* that application of *Calder* in the Internet context *requires proof that the out-of-state defendant's Internet activity is expressly targeted or directed to the forum state*." *Id.* at 262-63 (emphasis added).

More recently, in *Khashoggi*, the Fourth Circuit "acknowledged the continuing validity of the *Calder* 'effects' test, as well as its limitations." 138 F.4th at 160. As the Fourth Circuit explained: "The effects of the act for which a plaintiff seeks relief must create a connection *to the forum itself*, 'not just to parties who happen to live there.'" *Id.* (quoting *Hawkins v. i-TV Digitalis Tavkolesi zrt.*, 935 F.3d 211, 230 (4th Cir. 2019)). *See also Firebirds International, LLC v. Firebird Restaurant Group, LLC*, 2017 WL 4366750, at *7 (W.D.N.C. Sep. 30, 2017) (holding that "even if the Court were to assume the Plaintiff felt the 'brunt of the harm' in North Carolina" the plaintiff would fail to satisfy the "effects" test where its website did not expressly target North Carolina); *BeoCare Group, Inc. v. Morrissey*, 124 F.Supp.3d 696, 711 (W.D.N.C. 2015) ("BeoCare cannot establish specific jurisdiction over Smith solely based upon the effects that his allegedly tortious conduct had upon the company in North Carolina because any effects 'must ultimately be accompanied by the defendant's own contacts.'") (citation omitted).

Plaintiff relies heavily—if not entirely—on its alleged status as a "Charlotte-based company" such that the "brunt of the harm was felt by 1CapApp in North

Carolina". (ECF 22 pp 2-3, 12). However, Plaintiff's operations in North Carolina, and any harm that is alleged to have been suffered in North Carolina, are alone insufficient to support personal jurisdiction over the Individual Defendants.[2] "The Supreme Court has consistently held that the plaintiff cannot be the only link between the defendant and the forum." *Biglow v. Speaks*, 2025 WL 2417731, at *4 (W.D.N.C. June 3, 2025). "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for jurisdiction over him." *Id.*

Plaintiff's Complaint does not allege any conduct by any Defendant that was directed at or targeted North Carolina. Rather, the Complaint alleges that one or more out-of-state defendants used a personal email account to reset the password for

---

[2] Defendants also dispute that any harm would have been felt by Plaintiff in North Carolina. While Plaintiff argues that it is operated by its manager from North Carolina, Plaintiff is a Kansas limited liability company. (ECF 1 ¶ 5). *See P1 Grp., Inc. v. RipKurrent, LLC*, 2024 WL 4163515, at *5 n 3 (W.D.N.C. Aug. 14, 2024) (concluding "the Court would be hard pressed to find personal jurisdiction over either of the Dye Defendants because Plaintiff is a Kansas corporation, and thus any harm suffered . . . *would likely be felt in Kansas, and not in North Carolina*.") (emphasis added).

Additionally, while Plaintiff's Operating Agreement, dated December 31, 2013, provided that its principal place of business would be maintained in Charlotte "or at such other place or places as the Manager may from time to time determine[,]" (ECF 1-4 p 10 § 8.1) the Certificate of Merger, adopted on March 16, 2021, established the principal place of business in Lenexa, Johnson County, Kansas. (ECF 1-1 p 4 ¶ 7). *See Debbie's Staffing Servs., Inc. v. Highpoint Risk Servs., LLC*, 2018 WL 1918603, at *8 (M.D.N.C. Apr. 20, 2018) ("[I]t is reasonable to infer that [plaintiff] has suffered the brunt of the harm in North Carolina where it is incorporated and maintains its principal place of business.").

The cases cited by Plaintiff do not compel a different holding as both cases involved domestic corporations with their principal places of business in the forum state. *See First Am. First, Inc. v. Nat'l Ass'n of Bank Women*, 802 F.2d 1511, 1517 (4th Cir. 1986) ("First American . . . is incorporated in Virginia" and "[a]ll the operations, activities and services of First American are conducted in Virginia . . . ."); *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 372 (4th Cir. 1985) ("Appellant Blue Ridge Bank is a corporation domiciled and doing business in Virginia.").

an online account hosted by a third-party provider and used by the Individual Defendants' deceased mother when she lived in Kansas and managed a Kansas limited liability company. (ECF 1 ¶¶ 5, 38, 41-43; ECF 1-3 p 8, 15). In short, Plaintiff attempts to base personal jurisdiction on a connection to a party who just happens to live in North Carolina, rather than any connection between the Individual Defendants and this state.

    2.  *ALS Scan* provides a more accurate test in this context.

In *Carefirst*, the Fourth Circuit described "the model for Internet-based specific jurisdiction developed in *Zippo Manufacturing Co. v. Zipp Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997)[,]" as a "model for applying *Calder* principles to cases arising from electronic commerce." *Carefirst*, 334 F.3d at 399. The Court further explained that the *Zippo* model was "adopt[ed] and adapt[ed]" in *ALS Scan*. *Carefirst*, 334 F.3d at 399.

In *ALS Scan*, the Fourth Circuit recognized that the standard it adopted "for reconciling contacts through electronic media with standard due process principles is not dissimilar to that applied by the Supreme Court in *Calder* . . . ." *ALS Scan*, 293 F.3d at 714. However, the Court did not espouse an approach in which the *Calder* effects test is applied over, or in conjunction with, the test adopted in *ALS Scan*. Rather, the Court adopted and applied a specific standard pursuant to which "specific jurisdiction in the Internet context may be based only on an out-of-state person's Internet activity directed at [the forum state] and causing injury that gives rise to a potential claim cognizable in [the forum state]." *Id.* It is this standard—not the

10

broader principles established in *Calder*—that controls a determination within the Fourth Circuit of specific jurisdiction over out-of-state persons based on their Internet activity.

Under this test, "a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.*

The application of this standard in cases arising under the Computer Fraud and Abuse Act (CFAA) was recently confirmed in *Khashoggi* and it is the Fourth Circuit's analysis and holding therein that controls the determination of specific jurisdiction here.

### C. *This case is controlled by* **Khashoggi.**

In *Khashoggi*, the widow of murdered journalist, Jamal Khashoggi, sued the developer and licensor of "Pegasus spyware" that was used by agents of the United Arab Emirates to unlawfully surveil the plaintiff and her deceased husband for the benefit of the Saudi Arabian royal family. 138 F.4th at 156-57. The plaintiff's claims included a claim under the CFAA and a claim for computer trespass under Virginia state law. *Id.* at 157.

In affirming the district court's dismissal for lack of personal jurisdiction, the Court applied the analysis from *ALS Scan. Khashoggi*, 138 F.4th at 162. The Court began by noting: "The first step of this analysis, and the one most relevant here,

11

requires that the defendant have 'direct[ed] electronic activity into the State." *Id.* (quoting *ALS Scan*, 293 F.3d at 714). In holding this requirement was not satisfied, the Court noted that, as in *ALS Scan*, "NSO [did] not appear to have directed electronic activity into Virginia." *Id.* While it was alleged the plaintiff's "data was captured and rerouted to the UAE (and ultimately Saudi Arabia) when she was home with Jamal in Virginia" the electronic signals directed at the plaintiff's devices in Virginia were "at the direction of Saudi Arabia and the UAE, not NSO." *Id.* Accordingly, NSO did not purposefully avail itself of the Virginia forum by directing conduct there. *Id.* For the same reasons, "NSO did not expressly aim conduct at the Commonwealth of Virginia." *Id.* at 163.

The Court then noted that a "lawsuit filed by WhatsApp against NSO in the Northern District of California provides helpful contrast here." *Id.* at 163 (citing *WhatsApp Inc. v. NSO Group Techs. Ltd.*, 472 F. Supp. 3d 649 (N.D. Cal. 2020)). In *WhatsApp*, the plaintiff also asserted claims under the CFAA and state computer privacy laws. *Id.* As the Fourth Circuit explained, in holding there was personal jurisdiction over NSO, the Northern District of California "found that NSO *targeted WhatsApp's California-based servers* for the purposes of transmitting malicious computer codes—the Pegasus spyware—*through those servers* to facilitate the sort of surveillance Pegasus offers to its clients." *Id.* (quoting *WhatsApp*, 472 F. Supp. 3d at 671-72) (emphasis added). According to the Fourth Circuit, the Northern District of California "emphasized that NSO had 'sought out and accessed [WhatsApp's] servers,'" among other conduct. *Id.* (quoting *WhatsApp*, 472 F. Supp. 3d at 672).

12

The Fourth Circuit's analysis in *Khashoggi* is controlling in this case, where Plaintiff similarly alleges violations of the CFAA and violations of state computer trespass laws. In fact, the only other case in this Circuit in which a court has addressed personal jurisdiction in a CFAA case appears to be the *Verizon Online Servs., Inc. v. Ralsky* opinion cited by Plaintiff. However, rather than supporting Plaintiff's position, the *Ralsky* case further elucidates the distinction made by the Fourth Circuit in *Khashoggi* between the facts there and the facts in *WhatsApp*.

In *Ralsky*, the Eastern District of Virginia held the defendants "should have expected to be haled into court in Virginia for *deliberately exploiting Verizon's e-mail servers* for pecuniary gain while trespassing Verizon's property." 203 F. Supp. 2d 601, 616 (E.D. Va. 2002) (emphasis added). Crucially, the court repeatedly referenced the intentional attack on Verizon's servers. *Id.* at 617. For example, the court noted: "Defendant's alleged acts of transmitting millions of [unsolicited bulk emails or "UBE"] to and through Verizon's servers were clearly intentional" and "these e-mails were expressly aimed at Verizon's servers, seven of which [were] located in Virginia." *Id.* As the court explained, Verizon's injury "did not occur in cyber-space." *Id.* at 618. "It occurred in the forum state of Virginia where the UBE harmed a substantial portion of Verizon's e-mail servers by impairing its e-mail delivery system and leading to delays and consumer complaints." *Id.*

**D.** *No Individual Defendant directed electronic activity into North Carolina giving rise to Plaintiff's tort claims.*

As in *Khashoggi*, Plaintiff here does not allege that any of the Individual Defendants directed *any* electronic activity into North Carolina to gain access to Plaintiff's email or document storage account. *See also Carefirst*, 334 F.3d at 401 (holding there was no specific jurisdiction where the defendant did not "direct electronic activity into Maryland with the manifest intent of engaging in business or other interactions with that state in particular."). Unlike *WhatsApp* and *Ralsky*, there are no allegations that any Individual Defendant targeted a server owned or used by Plaintiff in North Carolina for the purpose of accessing any account or documents owned or used by Plaintiff.

To the contrary, Plaintiff alleges that it uses an "email and online document storage *provider*." (ECF 1 ¶ 38) (emphasis added). Plaintiff does not allege where this provider is located or where its servers are located.

Plaintiff further alleges that "one or more of the Defendants" gained access to the email and document storage account previously used by their deceased mother. (ECF 1 ¶¶ 41-42, 51, 55, 57). Prior to her death, the Individual Defendants' mother was a resident of Johnson County, Kansas. (ECF 1-3 p 8, 15). Plaintiff itself is a Kansas limited liability company with its principal place of business located in Kansas. (ECF 1 ¶ 5; ECF 1-1 p 4 ¶ 7).

Plaintiff alleges the unidentified Individual Defendant that gained access to his deceased mother's account did so by using a personal email account, designated as his mother's recovery account, to reset his mother's password. (ECF 1 ¶ 43). This

14

would have occurred in California, New Jersey or Missouri, and not in North Carolina. (ECF 1 ¶¶ 6-8).

Thus, an unidentified individual that lives outside of North Carolina used a personal email account to reset the password for an online account hosted by a third-party provider and used by his deceased mother when she lived in Kansas and managed a Kansas limited liability company. There is no allegation that this was done by directing any electronic signal into North Carolina, much less with the manifested intent of engaging in business or other interactions in North Carolina. Plaintiff alleges entirely out-of-state activities that are insufficient to support the exercise of personal jurisdiction over the Individual Defendants.

### E. *The conspiracy theory of jurisdiction is not applicable.*

Without ever identifying a single Defendant that is alleged to have sufficient contacts with North Carolina to support personal jurisdiction, Plaintiff attempts to impute personal jurisdiction to all three Individual Defendants through a "conspiracy theory of jurisdiction." (ECF 22 pp 13-15). "To succeed under this theory, [Plaintiff] would have to 'make a *plausible* claim (1) that a conspiracy existed; (2) that [the Individual Defendants] participated in the conspiracy; and (3) that a coconspirator's activities in furtherance of the conspiracy . . . had sufficient contacts with [North Carolina] to subject that conspirator to jurisdiction in [North Carolina].'" *Mobilization Funding, LLC v. Stokes*, 163 F.4th 55, 63 (2025) (quoting *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013)) (emphasis in original). As discussed above, Plaintiff has not alleged that any Defendant had sufficient contacts

15

with North Carolina to subject any other Defendant to jurisdiction based on this theory. Moreover, even assuming Plaintiff had sufficiently alleged personal jurisdiction over an Individual Defendant, Plaintiff has not made a plausible claim of conspiracy sufficient to impute any such jurisdiction to the remaining Individual Defendants.

Although the Fourth Circuit "has endorsed the conspiracy theory of personal jurisdiction, [it has] emphasized the need to *'plead with particularity' concrete facts supporting the existence of a conspiracy.*" *Mobilization Funding*, 163 F.4th at 63 (quoting *Unspam Techs.*, 716 F.3d at 329) (emphasis added). "[A] plaintiff asserting jurisdiction 'cannot rely solely on conclusory averments, but must adduce evidence of specific facts.'" *Id.* (citation omitted). "And to establish jurisdiction under the conspiracy theory, those specific allegations must add up to more than a 'logical possibility' of a conspiracy; if the facts alleged 'could equally describe arms-length transactions' between the purported co-conspirators, then the party asserting jurisdiction has not met its burden." *Id.* (quoting *Unspam Techs.*, 716 F.3d at 330). "[A] 'naked assertion of conspiracy' offered to establish jurisdiction 'stops short of the line between possibility and plausibility[.]'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

In *Mobilization Funding*, the Fourth Circuit held the plaintiff "offered only a 'conclusory allegation' of a conspiracy that '[fell] far short of the prima facie showing necessary to defeat [a] Rule 12(b)(2) motion.'" *Id.* (citation omitted). The plaintiff's conspiracy theory "focused on a 'referral partnership program' advertised by

16

Mobilization Funding on its website, under which general contractors like [the alleged coconspirator were] paid a commission when they refer[red] subcontractors . . . to Mobilization for its loan services." *Id.* The Court noted that "such a program could 'equally' reflect 'arms-length transactions . . . in the ordinary course of business,' rather than any kind of illicit conduct." *Id.*

Similarly, in *Unspam Technologies*, the Fourth Circuit held that the plaintiffs' "speculation" as to various banks' involvement in an alleged conspiracy based on the the frequency with which those banks processed the transactions at issue, and their failure to comply with Visa's operating regulations to monitor and terminate merchants involved in illegal activity, amounted to "no more than a bare allegation or logical possibility and [did] not suffice to allege a plausible claim of the existence of a conspiracy." 716 F.3d at 329-30. "The facts on which [the plaintiffs relied] could equally describe arms-length transactions involving the presentation of credit card transactions to banks for collection through the Visa network in the ordinary course of business." *Id.* at 330. "[C]onspiracy requires a 'common plan' and [there were] no allegations that the bank's processing of transactions were designed to achieve the illegal ends of the fraudulent pharmacists" with whom they were alleged to have conspired. *Id.*[3]

Here, Plaintiff first argues in support of its conspiracy theory of jurisdiction by pointing to its conclusory allegations that Defendants: (a) "conspired with one

---

[3] The other case relied on by Plaintiff, *BeoCare Group, Inc.*, is also in accord. 124 F. Supp. 3d at 708. There, this Court held the allegations of a conspiracy were insufficient to support a conspiracy theory of jurisdiction where there was no evidence that the defendant told another individual to represent him as an employee of a given entity in furtherance of the alleged conspiracy. *Id.*

another to perpetrate unauthorized access to 1CapApp's private, protected computer system[,]" (b) "had an agreement to do an unlawful act or do a lawful act in an unlawful way[,]" and (c) "acted pursuant to a common scheme to harm 1CapApp." (ECF 22 pp 13-14) (citing ECF 1 ¶¶ 60, 104, 105). These are nothing more "than '[t]hreadbare recitals' of the elements of civil conspiracy." *See Ospina v. Griesinger Assocs., Inc.*, 2021 WL 510627, at *7 (W.D.N.C. Feb. 11, 2021) (recommending dismissal of the plaintiff's claim for civil conspiracy).

In support of its argument that the allegations of a conspiracy are plausible, Plaintiff points to two allegations: (a) that Jordan copied Jason and Justin on emails that Jordan sent, in his capacity as Trustee, regarding the Trust's rights as a member of 1CapApp, and (b) that documents from their deceased mother's account were emailed to each of the Individual Defendants. (ECF 22 p 14). As noted above, Plaintiff's tort claims against the Individual Defendants do not arise out of emails Jordan sent to 1CapApp's manager in his capacity as Trustee. Therefore, those contacts do not give rise to personal jurisdiction against any Individual Defendant. Moreover, Plaintiff's allegation that documents were emailed from Jeanette Christian's account to all three Individual Defendants does not make a claim of conspiracy plausible. This allegation could equally reflect circumstances in which a single Individual Defendant logged into his deceased mother's account and decided on his own to email documents from that account to his brothers based on the belief they may find such documents helpful, interesting or otherwise noteworthy. At any rate, this equally could have occurred absent an agreement among the Individual

18

Defendants that it would occur and does not move the claim of a conspiracy over the line between possibility and plausibility.

II. **THE TRUST SHOULD BE DISMISSED FROM ALL CLAIMS EXCEPT COUNT VI FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

Each of Plaintiff's tort claims arise out of the alleged unauthorized access to Jeanette Christian's email and document storage account. The Trust moved for dismissal of the tort claims pursuant to Rule 12(b)(6) because (a) the Trust is not a natural person capable of having accessed Jeanette Christian's account, (b) the Complaint does not sufficiently allege a conspiracy to which the Trust, or any other Defendant, was a party, and (c) the Complaint does not support any theory of vicarious liability pursuant to which the Trust could be held liable for any alleged conduct on the part of an Individual Defendant. (ECF 16 pp 6-7).

In response, Plaintiff first argues that the Trust is an entity capable of being sued. (ECF 22 pp 18-19). That point has not been challenged by the Trust and there is no dispute that the Trust is capable of being sued. Nor does the Trust challenge the fact that it was sued as a separate entity, rather than suing Jordan in his capacity as Trustee of the Trust.

The Trust's argument does not concern the capacity in which it was sued. The issue is that Plaintiff alleges "one or more" unidentified Defendants accessed Jeanette Christian's email and document storage account. (ECF 1 ¶ 42). The Complaint does not allege which of three Individual Defendants are alleged to have accessed this account. The Trust can only be held liable for this conduct pursuant to some theory of vicarious or imputed liability, based on either an agency relationship with the

19

individual that accessed the account or conspiracy. Plaintiff's allegations are insufficient to support any such theory.

A. ***<u>The allegations are insufficient to support vicarious liability based on an agency relationship.</u>***

A principal is liable for an intentional tort committed by its agent "only '(1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business; or (3) when the agent's act is ratified by the principal.'" *McClean v. Duke Univ.*, 376 F. Supp. 3d 585, 615 (M.D.N.C. 2019) (quoting *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 491 (1986)). The Complaint does not support any of these theories of vicarious liability based on an agency relationship.

The Complaint does not specify which Individual Defendant is alleged to have accessed Jeanette Christian's account. For the Trust to be liable, one must make multiple alternative assumptions. If we assume Jordan was the individual that is alleged to have logged into the account, then we must further assume he did so in his capacity as Trustee and not for his own individual purposes. If we assume that Jason or Justin are alleged to have logged into the account, we must assume they were authorized by Jordan, as Trustee, or that Jordan ratified such conduct. Each of these are purely assumptions, none of which are supported by any allegations in the Complaint.

B. ***<u>The allegations are insufficient to support imputed liability based on a claim of conspiracy.</u>***

"[W]here a conspiracy is alleged, the plaintiff must plead facts amounting to more than parallel conduct and a bare assertion of conspiracy." *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 434 (4th Cir. 2020) (quotations and citation omitted). "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* (quotations and citation omitted). "The factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement." *Id.* (quotations and citation omitted).

Plaintiff has alleged no facts concerning any agreement alleged to have been made between the Defendants to access their mother's account. Plaintiff has alleged only threadbare recitals of the elements of a conspiracy. The only fact Plaintiff points to in further support of the alleged conspiracy is that whoever accessed their mother's account emailed documents from that account to the other two individuals. This is equally consistent with a set of facts in which that individual elected to email those documents absent any agreement with the other Defendants. Moreover, as it pertains to the Trust, there is no allegation that any agreement between the Individual Defendants was reached with Jordan in his capacity as Trustee.

There are no facts in the Complaint that support any theory of liability on the part of the Trust for the tort claims and those claims should be dismissed as against the Trust pursuant to Rule 12(b)(6).

## <u>CONCLUSION</u>

Defendants respectfully request that the court grant Defendants' Rule 12(b) Motions to Dismiss.

This the 30th day of March, 2026.

/s/ Richard Jeremy Sugg
Richard Jeremy Sugg
N.C. Bar No. 40351
BELL, DAVIS & PITT, P.A.
227 W. Trade Street, Suite 1800
Charlotte, NC 28202
Telephone: 704-227-0400
Email: jsugg@belldavispitt.com

*Attorneys for Defendants*
