# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:25-CV-00993-KDB-DCK

| | |
|---|---|
| **1CAPAPP, LLC,**<br><br>**Plaintiff,**<br><br>v.<br><br>**JORDAN CHRISTIAN, JUSTIN CHRISTIAN, JASON CHRISTIAN, AND THE CAROL JEANETTE CHRISTIAN REVOCABLE TRUST,**<br><br>**Defendants.** | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss for lack of jurisdiction. Doc. No. 15. The Court has carefully considered the motion, and the parties' briefs and exhibits. For the reasons discussed below, the Court will **GRANT** the motion.

## I.      LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) seeks to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). *See McClure v. Charlotte-Mecklenburg Bd. of Educ.*, No. 320-CV-00005-KDB-DCK, 2022 WL 317641, at *2 (W.D.N.C. Feb. 2, 2022). A party invoking federal court jurisdiction has the burden of establishing by a preponderance of the evidence that personal jurisdiction exists over the defendant. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). "Mere allegations of in personam jurisdiction are sufficient for a party to make [a] prima facie showing." *Barclays Leasing, Inc. v. Nat'l Bus. Sys., Inc.*, 750 F. Supp. 184, 186 (W.D.N.C. 1990).

1

The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." *IMO Indus., Inc. v. SEIM S.R.L.*, No. 3:05-CV-420-MU, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant ... factual conflicts must be resolved in favor of the party asserting jurisdiction ..." *Id.* (internal citations omitted).

There are two types of constitutionally permissible personal jurisdiction—general and specific. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (referring to general jurisdiction as "all-purpose" jurisdiction and specific jurisdiction as "case-linked" jurisdiction). General jurisdiction "requires continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009) (internal quotations omitted).

A court may exercise specific jurisdiction over a nonresident defendant if doing so comports with both the forum state's long-arm statute and the Fourteenth Amendment Due Process Clause. *See, e.g., Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). In North Carolina, where the long-arm statute extends personal jurisdiction to the limits of the Fourteenth Amendment's Due Process Clause, "the statutory inquiry merges with the constitutional inquiry." *Christian Sci. Bd. of Dirs. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Under the Fourteenth Amendment Due Process analysis, a court may exercise personal jurisdiction "if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interest in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Md., Inc. v.*

2

*Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

In analyzing due process requirements for asserting specific jurisdiction, the Court must consider, in order, "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst*, 334 F.3d at 396 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002)).

## II.      FACTS AND PROCEDURAL HISTORY

Plaintiff 1CapApp is a manager-managed Limited Liability Company ("LLC") organized under Kansas law that develops real-time captioning software for events, private meetings, and live broadcasts. Doc. Nos. 1 ¶¶ 5, 13; 1-4 at 7. As a result of a merger and a subsequent buy-out,[1] C. Jeanette Christian ("Jeanette") and Christine Joseph ("Joseph") each held a 43% ownership interest in the company.[2] *Id.* ¶ 17. Jeanette and Joseph jointly managed 1CappApp and were actively involved in its operations. *Id.* ¶ 18. Jeanette managed 1CapApp out of Kansas, where the company also has its principal place of business, while Joseph managed 1CapApp from her home in North Carolina. *Id.* ¶ 5; Doc. No. 24 at 1.

On May 18, 2022, Jeanette created the Carol Jeanette Christian Revocable Trust (the "Trust") and transferred her ownership interest in 1CapApp into it. Doc. No. 1-3 at 6–7. Jeanette identified her children Jordan, Justin, and Jason Christian ("the Individual Defendants") as

---

[1] In 2021, 1CapApp of North Carolina merged into 1CapApp LLC of Kansas. Doc. No. 1-1 at 4. After the merger was complete, the North Carolina entity was dissolved. *Id.*

[2] The remaining 14% is owned by Nicholas Trani, who is not a party to this litigation. Doc. No. 1 ¶ 17.

beneficiaries of the Trust. Doc. No. 22 at 3–4. Jeanette named herself as Trustee, with Jordan to succeed her in the event of her death. *Id.* On July 20, 2025, Jeanette passed away. Doc. No. 1 ¶ 22. Joseph continued to operate 1CapApp from her home in Charlotte following Jeanette's passing. *Id.* ¶ 5.

On October 24, 2025, Jordan emailed Joseph claiming that his mother's membership interest in 1CapApp had been transferred to the Trust and that after her death, he became its trustee. *Id.* ¶ 26. He also informed Joseph that as the successor trustee, he intended to manage Jeanette's membership interest on behalf of the Trust. *Id.* 1CapApp disputed this with Jordan, because although the Operating Agreement contemplates the assignment of membership interests into a trust for the benefit of descendants, written notice to "the Manager and all other Members" is required before the assignee will be considered a Member. Doc. Nos. 1 ¶ 31; 1-4 at 11. And, the only notice to 1CapApp occurred when Jordan contacted Joseph to assert the Trust's membership status. Doc. No. 1 ¶ 26. As a result, 1CapApp contends that Jeanette's membership interest was not transferred into the Trust and instead rests with her estate. Doc. No. 1 ¶¶ 30–31, 34.

On November 14, 2025, less than a month after that conversation, 1CapApp alleges that one or more of the Individual Defendants infiltrated its computer email and file storage service by using Jeanette's recovery e-mail and downloaded 57 gigabytes of data and documents, including financial data and sensitive contracts with various government agencies. *Id.* ¶¶ 41–53. 1CapApp further alleges that some of those documents were then emailed to Defendants' personal email addresses. *Id.* ¶¶ 46, 57–58.

In December 2025, 1CapApp filed the present action, alleging violation of the Computer Fraud and Abuse Act under 18 U.S.C. § 1030, along with state law claims of computer trespass, intentional intrusion upon seclusion, conversion, and civil conspiracy. *Id.* ¶¶ 71–108. On

4

December 17, 2025, this Court granted 1CapApp's motion for a Temporary Restraining Order, which restrained and enjoined the Individual Defendants from accessing or using any of the information obtained from Jeanette's email account or 1CapApp's Google Drive. Doc. No. 8. On March 9, 2026, Defendants timely moved to dismiss the Complaint. Doc. No. 15. Plaintiff timely responded, and the motion is now ripe for this Court's review.

## III.    DISCUSSION

As a threshold matter, Defendants assert that the matter should be dismissed as to the Individual Defendants because the Court lacks personal jurisdiction over them. Although Defendants do not assert that the Court lacks personal jurisdiction over the trust, the Court will raise the issue sua sponte.

### A.    Individual Defendants.

Personal jurisdiction analysis begins by considering whether a court has general jurisdiction over the defending parties. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)). Defendant Jordan Christian resides in California, Defendant Jason Christian resides in New Jersey, and Defendant Justin Christian resides in Missouri. Doc. No. 16 at 2. 1CapApp does not assert that this Court can exercise general personal jurisdiction over the Individual Defendants. *See* Doc. No. 22. Therefore, this Court must be able to exert specific personal jurisdiction over the Individual Defendants to properly adjudicate 1CapApp's claims. *See Khashoggi v. NSO Grp. Technologies Ltd.,* 138 F.4th 152, 159 (4th Cir. 2025) (holding that the district court was required to assure itself of its specific jurisdiction to address claims following a lack of general jurisdiction).

5

"To satisfy the pleading requirements for specific jurisdiction, a plaintiff must plausibly allege that (1) the defendant purposefully availed [themselves] of the privilege of conducting activity in North Carolina, (2) plaintiff's claims arise out of those activities, and (3) exercising personal jurisdiction would be fair." *Biglow v. Speaks,* No. 3:24-CV-996-KDB-SCR, 2025 WL 2417731, at *4 (W.D.N.C June 3, 2025). Furthermore, "[t]he Supreme Court has consistently held that the plaintiff cannot be the only link between the defendant and the forum." *Id.* (citing *Walden v. Fiore,* 571 U.S. 277, 285 (2014)). "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478 (1985)).

1CapApp alleges the Individual Defendants hacked into 1CapApp's system—stealing tens of thousands of files—by using a password reset function to gain access to their mother's 1CapApp email and cloud data.[3] Doc. No. 1 ¶¶ 38, 42, 49. The Fourth Circuit has held that for such electronic contacts to serve as a basis for this Court's exercise of specific jurisdiction, "the effects of the act for which a plaintiff seeks relief must create a connection to the forum itself, not just to parties who live there." *Khashoggi,* 138 F.4th at 160.

Indeed, "[i]t is the quality and nature of the defendant's connections with the forum that justify personal jurisdiction." *Khashoggi,* 138 F.4th at 161 (citation and emphasis omitted). And

---

[3] 1CapApp alleges that various phone calls and other communications aimed at 1CapApp by Jordan in his official capacity as trustee should be considered in the analysis of the Court's ability to exercise personal jurisdiction over Jordan as an individual. Doc. No. 22 at 9–10. Because 1CapApp's claims pertain to the alleged hacking of its email and storage servers, not the disputed issues related to the trust more generally, the Court cannot consider communications between Joseph and Jordan about the Trust in its analysis as they bear no relation to the act of the alleged hacking, which is the subject of Plaintiff's claims. *See Renfinity, Inc. v. Jones,* No. 3:20-CV-00422-KDB-DSC, 2022 WL 332782, at *4 (W.D.N.C Feb. 3, 2022) (finding that the purposeful availment analysis of a fraud claim needed to be focused on the alleged conduct that constituted and furthered the fraud).

6

"[b]rief email exchanges and telephone conversations … are, alone, 'qualitatively insufficient to show purposeful availment.'" *People Exp. Airlines, Inc. v. 200 Kelsey Associates, LLC*, 922 F. Supp. 2d 536, 549 (E.D. Va. 2013) (quoting *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 302 (4th Cir. 2012)).

Here, 1CapApp is organized under Kansas law and identifies Kansas as its principal place of business, notwithstanding that one of its member-managers operates from Charlotte. Doc No. 1-1 ¶¶ 3–4. The alleged hacking of 1CapApp's cloud-based data—which reside in locations unknown to the Court—used Jeanette's Kansas-based credentials to target 1CapApp's business records, not Joseph personally. Further, the record reflects that the individual Defendants only asserted "connection" to North Carolina arises through its communications to Joseph, a manager-member who happens to live and work in the state. Thus, on this record it is uncertain whether the Individual Defendants have any connection to North Carolina at all—let alone a connection of sufficient quality to support specific jurisdiction. Accordingly, the Court concludes that it cannot exert personal jurisdiction over the Individual Defendants. For the same reasons, 1CapApp's conspiracy theory of jurisdiction fails.[4]

**B.      The Trust**

1CapApp next alleges that Jordan was acting on behalf of the Trust when he or his co-conspirators decided to unlawfully access 1CapApp's email and storage servers and download its

---

[4]  1CapApp also alleges that a conspiracy theory of jurisdiction exists because the Defendants were part of a civil conspiracy to unlawfully access 1CapApp's private computer servers and share stolen data amongst each other. Doc. No. 22 at 13–15. To succeed on a conspiracy theory of jurisdiction, a plaintiff would need to plausibly allege "(1) that a conspiracy existed; (2) that the . . . defendants participated in the conspiracy; and (3) that a coconspirator's activities in furtherance of the conspiracy had sufficient contacts with [the forum state] to subject that conspirator to jurisdiction in [the forum state]." *Unspam Techs., Inc. v. Chernuk,* 716 F.3d 322, 329 (4th Cir. 2013). Absent allegations that the Individual Defendants' actions targeted North Carolina, the Court cannot exercise personal jurisdiction over them.

data. Doc. No. 22 at 19. Traditionally, the law has not treated a trust as a separate juridical entity. *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016). Instead, a trust has been understood as a "fiduciary relationship" in which one party holds and manages property for the benefit of others. *Id.* (first quoting *Klein v. Bryer,* 227 Md. 473, 476–477 (1962); then citing Restatement (Second) of Trusts § 2 (1957)). Because a trust was not recognized as a legal person, it could not appear in court in its own name. *Id.* Litigation involving a trust, therefore, is brought "by or against the trustees in their own name." *Id.* (quoting *Glenn v. Allison,* 58 Md. 527, 529 (1882)) (additional citation omitted). When the trustee litigates in his own name, his citizenship alone "is all that matters for diversity purposes." *Id.* (quoting *Navarro Savings Assn. v. Lee,* 446 U.S. 458, 462–66 (1980)). As a result, a traditional trust does not require any inquiry into the citizenship or "membership" of its beneficiaries, since the trust itself is not the entity before the court.[5] *Id.*

The current "trend among circuit courts has also been to distinguish a traditional trust as a fiduciary relationship created by a trust agreement and not a separate entity … [from] an artificial legal entity which calls itself a trust." *Wurts v. Branch Banking & Tr. Co.*, 402 F. Supp. 3d 335, 337 (S.D.W. Va. 2019) (collecting cases). *See also Raymond Loubier Irrevocable Tr. v. Loubier*,

---

[5] 1CapApp erroneously relies upon North Carolina statutory law as support for its ability to proceed against the Trust as an entity. *See* Doc. No. 22 at 18 (quoting N.C. Gen. Stat. § 36C-8-816(24)). However, the cited statute solely describes the ability of a trustee to prosecute or defend an action in their official capacity as trustee. It fails to mention a trust's ability to sue or be sued itself. 1CapApp also cites the Restatement of Trusts, which states that "[a] third party may assert a claim against a trust for liability incurred in trust administration by proceeding against the trustee in the trustee's representative capacity, whether or not the trustee is personally liable." *Id.* at 18–19 (quoting Restatement (Third) of Trusts § 105). This passage, read literally, instructs a third party to proceed against a trustee in their representative capacity rather than the trust itself. It is similarly devoid of any support for 1CapApp's ability to sue the trust as an entity.

8

858 F.3d 719, 722, 731 (2d Cir. 2017) (concluding that, for a traditional trust, *only* the trustee can be haled into court.)

However, even if the trust could be sued, 1CapApp identifies no actions by the trust that were directed toward and into North Carolina. Therefore, it has not established that the Court can exert personal jurisdiction over the trust. 1CapApp also asserts that if the trust is the wrong party to be sued, it could simply seek leave of the Court to substitute Jordan, as trustee, as the proper defendant. It matters not. For the same reasons that 1CapApp has not demonstrated that Jordan in his individual capacity has directed his actions into North Carolina, neither has it demonstrated that Jordan as trustee has done so. As discussed, Jordan's only interactions directed into North Carolina are a handful of emails asking questions about 1CapApp and disclosing the existence of the trust to Joseph. Those limited acts are insufficient for the Court to exercise personal jurisdiction over him, *see People Exp. Airlines,* 922 F. Supp. 2d at 549, particularly where the alleged hacking targeted Kansas-based 1CapApp's business information. Accordingly, the Court lacks personal jurisdiction over the trust (and its trustee).

In sum, 1CapApp—a Kansas-based LLC—asks this Court to assert personal jurisdiction over a Kansas trust with a California-based trustee, as well as residents of California, New Jersey, and Missouri. However, the alleged hacking targeted the Kansas LLC using the email of a deceased Kansas-based member-manager to obtain its business information. On these facts, the defendants lack sufficient contacts with North Carolina, and the Court therefore concludes that it cannot exercise personal jurisdiction over them. Accordingly, Defendants' Motion to Dismiss for lack of personal jurisdiction will be granted.

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. No. 15) is **GRANTED**;

2. Defendants' Motion for Joinder of Party Counterclaim Defendant (Doc. No. 17) is **DENIED** as moot;

3. Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 32) is **DENIED** as moot; and

4. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: July 9, 2026

Kenneth D. Bell
United States District Judge

10